ACCEPTED
06-15-00022-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
6/4/2015 5:41:25 PM
DEBBIE AUTREY
CLERK

No. 06-15-00022-CR

IN THE

SIXTH COURT OF APPEALS

at TEXARKANA

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
6/4/2015 5:41:25 PM
DEBBIE AUTREY
Clerk

_____

**SONYA KAY HARGETT,**

**Appellant,**

**v.**

**STATE OF TEXAS,**

**Appellee.**

_____

**Appealed from the 71st District Court**

**for Harrison County, Texas**

---

**APPELLANT'S BRIEF**

---

Jason D. Cassel
Texas State Bar No. 24006970
jdc@emafirm.com
ALBRITTON LAW FIRM
P.O. Box 2649
Longview, Texas 75606
Telephone  (903) 757-8449
Facsimile  (903) 758-7397


ATTORNEY FOR APPELLANT
Sonya Kay Hargett

**APPELLANT REQUESTS ORAL ARGUMENT**

**No. 06-15-00022-CR**

**SONYA KAY HARGETT,**

**Appellant,**

**v.**

**STATE OF TEXAS,**

**Appellee.**
_____

**IDENTITY OF THE PARTIES AND COUNSEL**
_____


Appellant certifies that the following is a complete list of the parties, attorneys and any other person who has any interest in the outcome of this lawsuit:

Sonya Kay Hargett
APPELLANT

Jason D. Cassel
Texas State Bar No. 24006970
jdc@emafirm.com
ALBRITTON LAW FIRM
P.O. Box 2649
Longview, Texas 75606
Telephone  (903) 757-8449
Facsimile   (903) 758-7397

ATTORNEY FOR THE APPELLANT ON APPEAL & TRIAL

THE STATE OF TEXAS
APPELLEE

Coke Solomon
Harrison County District Attorney
Shawn Connally
Harrison County Assistant District Attorney
200 West Houston, Suite 206
Marshall, Texas 75670
Telephone  (903) 935-8408
Facsimile   (903) 938-9312

ATTORNEYS FOR THE STATE OF TEXAS

# TABLE OF CONTENTS

IDENTITY OF THE PARTIES AND COUNSEL ................................................... ii

TABLE OF CONTENTS ............................................................................iv

INDEX OF AUTHORITIES...........................................................................v

STATEMENT OF THE CASE.......................................................................1

ISSUES PRESENTED FOR REVIEW .....................................................3

**The drug testing results and expert testimony were not admissible under Article 38.35(d)(1) of the Texas Code of Criminal Procedure where the evidence showed the lab was not accredited by DPS as required, the testing was confirmatory and the lab was not under contract with the probation department at the time of the analysis. Ms. Hargett was harmed by this error.**

STATEMENT OF FACTS ....................................................................3

SUMMARY OF THE ARGUMENT ....................................................5

ARGUMENT ...................................................................................5

CONCLUSION AND PRAYER .........................................................11

CERTIFICATE OF SERVICE …………….…………….…….....................................11

## INDEX OF AUTHORITIES

### A. <u>Cases</u>

*Casey v. State*, 215 S.W.3d 870 (Tex. Crim. App. 2007 ...........................................5

*Ellison v. State*, 201 S.W.3d 714 (Tex. Crim. App. 2006) ........................................5

*Ex parte Doan*, 369 S.W.3d 205 (Tex. Crim. App. 2012)..........................................9

*Ex parte Roberts*, 409 S.W.3d 759 (Tex. App.—San Antonio 2013, no pet.) ....5, 10

*Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992) ...........................................2

### B.     <u>Statutes</u>

Tex. Code. Crim. Proc. Art. 38.35 ...................................................2, 3, 4, 5, 8, 9, 10

Texas Government Code §411.0205 ............................................................6, 7, 10

**SONYA KAY HARGETT,**

**Appellant,**

**v.**

**STATE OF TEXAS,**

**Appellee.**

_____

**APPELLANT'S BRIEF**

_____

Appellant, Sonya Hargett, submits her brief. Appellant will be referred to as Ms. Hargett. Appellee, the State of Texas, will be referred to as the State.

**STATEMENT OF THE CASE**

On June 18, 2009, Ms. Hargett was arrested for felony Driving While Intoxicated and indicted on November 23, 2009. CR 6-7. Approximately a year later, on November 1, 2010, Ms. Hargett pleaded guilty to felony DWI and, pursuant to a plea agreement, was sentenced to 10 years in prison probated for 5 years. CR23-33. One of the conditions was that Ms. Hargett abstain from the use of alcohol and controlled substances. CR 32. On or about August 27, 2014, the State filed an Application for Revocation of Probation alleging that Ms. Hargett tested positive for methamphetamine on July 21, 2014 and methamphetamine and ETG/Alcohol on August 18 2014. CR 54.

The State's Application was set for hearing on October 6, 2014. CR 68. On the same day the State filed a Motion for Continuance and the case was reset until December 17, 2014 to subpoena the chemist that performed the testing from Redwood Toxicology in California. CR 68, 71.

On December 17, 2014, the State abandoned the July 21 allegation, proceeding with August 18, 2014 allegations. RR 4. Ms. Hargett pleaded not true[1]. RR 6. During the hearing, Ms. Hargett objected to the admission of the results of testing on two grounds, that the State failed to prove the scientific predicate of the testing under *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992) and that the results were not admissible under the Texas Code of Criminal Procedure Article 38.35(d)(1) because "The Lab" was not a DPS accredited lab and that they were performing "confirmatory testing" while they were not under contract with the probation department. RR 24, 28-37. Ultimately, Ms. Hargett's objection were overruled and the results were admitted. RR 35-38. The court found that Ms. Hargett had "violated her probation," revoked her probation and sentenced her to 2 years in the Texas Department of Criminal Justice. RR 78 and CR 87. Ms. Hargett timely filed a notice of appeal. CR 92.

---

[1] The judgment revoking probation mistakenly indicates that Ms. Hargett pleaded true to the allegations in the motion to revoke. CR87.

2

## ISSUE PRESENTED FOR REVIEW

1. **The drug testing results and expert testimony were not admissible under Article 38.35(d)(1) of the Texas Code of Criminal Procedure where the evidence showed the lab was not accredited by DPS as required, the testing was confirmatory and the lab was not under contract with the probation department at the time of the analysis. Ms. Hargett was harmed by this error.**

## STATEMENT OF FACTS

On December 17, 2014, the court heard the application to revoke Ms. Hargett's probation. RR 4. The only allegations were that Ms. Hargett tested positive for methamphetamine and ETG/alcohol on or about August 18, 2014. RR 6. The State first called, Tanya Boyd, a Harrison County Probation Officer that testified she obtained the urine sample from Ms. Hargett on the date in question. RR 8-9. Ms. Boyd testified that she had Ms. Hargett urinate in a "plain foam cup," like a coffee cup. RR 14. The urine was then poured into a separate container, which is depicted in State's Exhibit 1 and 2. RR 14-15. Ms. Boyd then packed the sample and it was then sent to Redwood Laboratory. RR 13, 15. The sample was later "split" and a portion sent to "The Lab" in Tyler, Texas. RR 21-22.

The State next called Tommy Thompson, the director of "The Lab." RR 16. Mr. Thompson testified that "The Lab" is a DPS and DEA registered lab, meaning they are registered to handle controlled substances. RR 17, 28. Mr. Thompson, however, testified they are not a DPS accredited lab nor has they ever applied for accreditation. RR 28, 29, 31. Mr. Thompson testified that he was asked to perform confirmatory testing on Ms. Hargett's urine in this case. RR 19, 24, 28. Furthermore, he testified that he had been in communication about "providing confirmation testing for the county" and believed or thought he was at the time he testified, under contract with the county, but ultimately did not know if the contract had been fully executed. RR 24, 26-28. Ms. Hargett objected on the basis of Texas Code of Criminal Procedure Article 38.35(d)(1) that the results were inadmissible because "The Lab" was not accredited by DPS under the Government Code and they were performing confirmation testing while not under contract with the probation department. RR 29-31. The objection was overruled. RR 30. Later, the trial court pointed out the exclusion for presumptive testing if performed under contract with a probation department. RR 78. Ms. Hargett repeated her objections and noted Mr. Thompson testified he was performing confirmatory testing and he was not even sure he was under contract at the time he testified, much less when he performed the analysis as required by statute. RR 78. Ms. Hargett's probation was revoked, assessing her punishment at 2 years in TDCJ-ID. RR78.

4

## SUMMARY OF THE ARGUMENT

The trial court erred by overruling Ms. Hargett's objection to the testimony of purported expert and the results of the testing performed by Mr. Thompson under Article 38.35(d)(1) of the Texas Code of Criminal Procedure.

## ARGUMENT

The standard of review in evaluating a trial court's decision to admit or exclude expert testimony is an abuse of discretion. *Ellison v. State*, 201 S.W.3d 714, 723 (Tex. Crim. App. 2006). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). However, the trial court's application of the law to undisputed facts is reviewed de novo. *Ex parte Roberts*, 409 S.W.3d 759, 762 (Tex. App.—San Antonio 2013, no pet.).

Article 38.35 provides in relevant part:

"Except as provided by Subsection (e), a forensic analysis of physical evidence under this article and expert testimony relating to the evidence are not admissible in a criminal action if, at the time of the analysis, the crime laboratory conducting the analysis was not accredited by the director under Section 411.0205, Government Code."[2]"

---

[2] This a link to a list in state labs accredited by the Texas Department of Public Safety as provided by the Government Code.
https://www.txdps.state.tx.us/CrimeLaboratory/documents/List_Texas_LabsAccredited

5

Subsection (e) provides:

"A forensic analysis of physical evidence under this article and expert testimony relating to the evidence are not inadmissible in a criminal action based solely on the accreditation status of the crime laboratory conducting the analysis if the laboratory:

(A)   except for making proper application, was eligible for accreditation by the director at the time of the examination or test; and

(B)   obtains accreditation from the director before the time of testimony about the examination or test."

Lastly, "[f]orensic analysis" means a medical, chemical, *toxicologic*, ballistic, or other expert examination or test performed on physical evidence, including DNA evidence, for the purpose of determining the connection of the *evidence to a criminal action*. The term includes an examination or test requested by a law enforcement agency, prosecutor, criminal suspect or defendant, or court. The term *does not include*:

(A)   latent print examination;

(B)   a test of a specimen of breath under Chapter 724, Transportation Code;

(C)   digital evidence;

(D) an examination or test excluded by rule under Section 411.0205(c), Government Code;

(E) a *presumptive test* performed for the purpose of determining compliance with a term or condition of community supervision or parole and conducted by or *under contract* with a community supervision and corrections department, the parole division of the Texas Department of Criminal Justice, or the Board of Pardons and Paroles; or

(F) an expert examination or test conducted principally for the purpose of scientific research, medical practice, civil or administrative litigation, or other purpose unrelated to determining the connection of physical evidence to a criminal action." *Emphasis added*.

Here, Mr. Thompson purported to testify about the results of his toxicological testing of Ms. Hargett's urine. RR 38. He testified his testing was confirmatory in nature. RR 19, 24, 28. He testified that he performed testing on or about October 24, 2014. RR 44. Mr. Thompson indicated he had sent a contract to "Mr. Cooper in the probation department" sometime between November and September but was unsure if it had been executed at the time he testified. RR 27-28. Mr. Thompson testified unequivocally that he was not accredited by the Texas Department of Public Safety. RR 28, 29, 31.

7

Ms. Hargett contends the results were inadmissible because the results were a toxicological test performed by an unaccredited lab and alternatively, that the testing was confirmatory in nature, performed by a lab not under contract with the probation department at the time of the analysis.

First, the analysis of Ms. Hargett's urine is a "forensic analysis." A forensic analysis includes chemical and toxicological testing. Tex. Code. Crim. Proc. Art. 38.35 (a)(4). However, Article 38.35(a)(4)(E) provides an exclusion to "forensic analysis." Specifically, "a *presumptive test* performed for the purpose of determining compliance with a term or condition of community supervision or parole and conducted by or *under contract* with a community supervision and corrections department, the parole division of the Texas Department of Criminal Justice, or the Board of Pardons and Paroles." The State's contention was that a probation revocation hearing is a "quasi-criminal action" and "not fully a criminal action." RR 29-30.

However, Article 38.35(a)(2) defines "criminal action as including "an investigation, complaint, arrest, bail, bond, trial, appeal, punishment or other matter related to conduct proscribed by a criminal offense." Furthermore, in *Ex parte Doan*, 369 S.W.3d 205(Tex. Crim. App. 2012), the Court of Criminal Appeals held that a probation revocation and a separate criminal prosecution were "criminal, judicial proceedings with nearly identical procedural rules." While the

issue *Doan* revolved around double jeopardy concerns related to a theft allegation, the Court pointed out that a probation revocation "sought to prove theft in order have the appellant's criminal punishment from a prior case altered to his detriment." *Ex parte Doan*, 369 S.W.3d at 212. Here, it is clear that the State sought to prove a forensic analysis of her urine in order to impose Ms. Hargett's criminal punishment. Accordingly, the probation revocation is a criminal action as defined by Article 38.35.

Next, the trial court noted the exclusion of presumptive testing performed under contract with a community supervision department. RR 78. This, however, provides no refuge for the State. Mr. Thompson repeatedly testified he was performing confirmatory testing. RR 19, 24, 28. Secondly, he could not equivocally state he was under contract with the "probation department" at the time of the hearing much less at the time of the analysis. RR 27-28. Thus, the State has failed to prove they are entitled to the exclusion provided by Article 38.35 (a)(4)(E).

This brings to the forefront section (d)(1) which provides that forensic analysis and expert testimony relating to the evidence are not admissible if at the time of the analysis, the laboratory is not accredited as provided by the Texas Government Code. Tex. Code of Crim. Proc. Art. 38.35(d)(1). It is undisputed

that "The Lab" was not accredited by the Texas Department of Public Safety as required by Texas Government Code §411.205.  RR 28, 29, 31.

Where the facts are undisputed, the trial court's application of the law is reviewed de novo. *Ex parte Roberts*, 409 S.W.3d 759, 762 (Tex. App.—San Antonio 2013, no pet.). Accordingly, this Court should review the decision to allow Mr. Thompson's testimony de novo.

The testimony reflects that Mr. Thompson performed a forensic analysis of Ms. Hargett's urine to determine whether she violated probation and punishment should be imposed.  The Lab was not properly accredited and his testimony was inadmissible under Article 38.35(d)(1) of the Texas Code of Criminal Procedure. The trial court abused his discretion in admitting Mr. Thompson's testimony and the results of his testing.

## CONCLUSION AND PRAYER

Based on the record and the law before it, Ms. Hargett prays that the Court of Appeals reverse the trial court's decision to revoke her probation on the basis of the erroneously admitted test results.

Respectfully submitted,

_____
JASON D. CASSEL
Texas State Bar No. 24006970
jdc@emafirm.com

10

ALBRITTON LAW FIRM
P.O. Box 2649
Longview, Texas 75606
Telephone (903) 757-8449
Facsimile   (903) 758-7397

ATTORNEY FOR APPELLANT
SONYA KAY HARGETT

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing Appellant's Brief has been forwarded to the Harrison County District Attorney's Office on this 4th day of June, 2015.

_____
JASON D. CASSEL